# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

MARK GUERIN,

        Plaintiff,

v.                                                                               No. CIV 97-0836 BB/WWD

NEW MEXICO DEP'T OF HEALTH, LAS
VEGAS MEDICAL CENTER; GARY BUFF;
ALBINO MARTINEZ; AND JOHN DOES I-
V,

        Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on cross-motions for summary judgment filed by Defendants (Doc. 29) and Plaintiff (Doc. 36). Having considered the submissions of the parties and the applicable law, the Court determines that Defendants' motion should be GRANTED, and that Plaintiff's motion should be DENIED.

**FACTS**

Plaintiff was employed by Defendant Department at the Las Vegas Medical Center. In mid-1995, he exercised his right to take unpaid parental leave under the provisions of the Family and Medical Leave Act, 29 U.S.C. Section 2601 et seq. (FMLA). Prior to returning to work following the expiration of that leave of absence, in November 1995, Plaintiff requested another unpaid leave of absence because he wished to run in a local election, as a candidate for mayor of Las Vegas, New Mexico. A New Mexico statute, NMSA 1978 10-9-21(C), requires any state employee who becomes a candidate for public office to take an unpaid leave of absence. Plaintiff directed his request for a

political leave of absence to Defendant Buff. Buff consulted Plaintiff's supervisor, Defendant Martinez, who indicated his department would be harmed if Plaintiff were allowed to remain on leave. Buff therefore denied Plaintiff's request. Plaintiff immediately typed up a letter of resignation and quit his job.

Plaintiff's candidacy was unsuccessful. In June 1997, he filed his Complaint in this case. Plaintiff maintains that Defendants violated his First Amendment rights by denying the requested leave of absence; that the denial was in retaliation for taking parental leave under FMLA; that his right to substantive and procedural due process was violated by the manner in which his request for leave was handled, and in the denial of the request; that the denial of his request for leave constituted a constructive discharge; and that he was denied equal protection of the law because two other employees of the Medical Center were granted leave to run for office, but he was denied such leave. Defendants have moved for summary judgment on all the claims, maintaining that no violations of Plaintiff's rights occurred and that, even if there was a statutory or constitutional violation, the individual Defendants are entitled to qualified immunity.[1] Plaintiff, on the other hand, has moved for partial summary judgment on his First Amendment and due-process claims.

**DISCUSSION**

"Summary judgment is proper only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Quaker

---

[1] Defendants Department and the Medical Center, in the Answer and the pretrial report, have maintained the claims against them are barred by the Eleventh Amendment. Defendants indicated at the hearing held on the summary judgment motions that such a defense will not be raised because Plaintiff seeks only injunctive relief against the Department.

2

State Minit-Lube, Inc. v. Fireman's Fund Ins. Co., 52 F.3d 1522, 1527 (10th Cir. 1995) (quoting Fed. R. Civ. P. 56(c)). "All facts and reasonable inferences must be construed in the light most favorable to the nonmoving party." Id. On a motion for summary judgment, the issue is "not whether [the court] thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). "Nevertheless, a jury question does not exist because of the presence of a mere scintilla of evidence; rather, there must be a conflict in substantial evidence to create a jury question." Walker v. NationsBank of Florida, 53 F.3d 1548, 1555 (11th Cir. 1995). The Court will consider the parties' motions for summary judgment in light of these standards.

**A. FMLA Retaliation**

It is well-established that the McDonnell Douglas analytical framework applies to retaliation claims such as Plaintiff's. First, Plaintiff must establish a *prima facie* case of prohibited retaliation. Morgan v. Hilti, Inc., 108 F.3d 1319, 1325 (10th Cir. 1997). To do so, Plaintiff must show (1) he engaged in a protected activity under the FMLA; (2) he suffered a material adverse employment action subsequent to his participation; and (3) there exists a causal connection between the adverse employment action and his participation in protected activity. See Morgan; Cole v. Ruidoso Municipal Schools, 43 F.3d 1373, 1381 (10th Cir. 1994).

If Plaintiff establishes a *prima facie* case, the burden shifts to Defendants to articulate some legitimate nondiscriminatory reason for the adverse employment decision. Morgan, 108 F.3d at 1323. If Defendants proffer such a legitimate business reason, they successfully rebut the presumption raised by Plaintiff'*s prima facie* case. Id. Plaintiff must then prove discriminatory or retaliatory intent, either through direct evidence or by proving that the reasons Defendants offered are not the true

3

reasons for Defendants' action, but are merely a pretext for discrimination or retaliation. Cone v. Longmont United Hosp. Ass'n, 14 F.3d 526, 529 (10th Cir. 1994).

Plaintiff has made out a *prima facie* case by establishing he took leave under the FMLA, was arguably subjected to an adverse employment action,[2] and suffered this adverse action while he was still exercising his rights under the FMLA. See Morgan, 108 F.3d at 1325 (*prima facie* case established where adverse employment decision occurred on day plaintiff returned from FMLA leave). In response, Defendants have proffered the following explanation for the denial of the requested leave of absence. Defendant Buff denied the request after consulting with Defendant Martinez. Martinez informed Buff, without actually doing any calculations or checking any documentation, that he believed his department and the Medical Center's ability to obtain financial reimbursements from sources such as Medicaid would suffer an adverse impact if Plaintiff were allowed to extend his leave of absence for four more months. Martinez recommended that the request not be granted, and Buff denied the request.

The legitimate business reason proffered by Defendants, therefore, is Martinez' belief, at the time he made his recommendation, that it would not be in the Medical Center's financial interest to allow Plaintiff to continue to be absent from his job. Plaintiff has offered no evidence tending to show this belief was not held in good faith at the time his request for a leave of absence was denied. See McKnight v. Kimberly Clark Corp., 149 F.3d 1125, 1129 (10th Cir. 1998) (test of motivating reason for employer's action is good faith belief). Both Plaintiff and Defendants have submitted information

---

[2]It is not clear that denial of a request for an unpaid leave of absence, especially when the employee has just taken twelve weeks of FMLA leave, constitutes an adverse employment action sufficient to support a retaliation claim under the FMLA. Indeed it seems illogical Congress would have so intended. For purposes of this opinion, however, the Court assumes this to be the case.

4

and affidavits arguing about whether Martinez' perception, with the benefit of hindsight, turns out to have been accurate or not. Both sides have attempted to show there either was or was not a decrease in revenue during the time Plaintiff was on FMLA leave. This after-the-fact inquiry, however, is not relevant to the good-faith nature of Martinez' perception at the time of the adverse employment action. See id. (articulated motivating reason is not converted into pretext merely because, with benefit of hindsight, it turned out to be poor business judgment).

Buff testified in his deposition that no figures or dollar amounts were discussed when he met with Martinez. Martinez' supplemental affidavit admits he did not undertake any type of data review before he met with Buff. Whether Martinez' perception was factually sound or not, therefore, does not matter, because his recommendation was based not on a review of the facts but solely on his perception. What does matter is whether he had a good-faith belief his perception was true. Id. There is no evidence that he did not. In fact, given his testimony by deposition and affidavit that he and other employees were pitching in to parcel out Plaintiff's work while Plaintiff was on FMLA leave, the only evidence is that it was entirely rational for Martinez to believe the department could not afford to be without Plaintiff for four more months. The Court holds, therefore, that Plaintiff has not created a genuine issue of material fact concerning Martinez' motivation for his recommendation that the request for leave of absence be denied. Similarly, no evidence has been presented tending to show that Buff did not have a good-faith belief that Plaintiff was too valuable an employee to be missed for four more months. Absent some evidence that either Martinez or Buff acted out of retaliatory motives, summary judgment will be granted to Defendants on the FMLA retaliation claim.[3]

---

[3]The Court notes Plaintiff's but-for causation argument– that if he had not taken FMLA leave, he most likely would have been allowed to take the election leave he requested because Defendants would not have already done without his services for twelve weeks, and would not have been aware

5

**B. Equal Protection**

Plaintiff maintains he was denied his right to equal protection of the laws because two other Medical Center employees were granted leaves of absence to run in the local election, while his request was denied. This contention fails because the other two employees were not similarly situated with Plaintiff. Neither employee was supervised by Martinez, and both employees' supervisors recommended the requested leave of absence be granted. Buff granted the leaves of absence on the basis of those recommendations. In addition, Plaintiff made no effort to show the other two employees were similarly situated to him as far as job responsibilities, importance of their positions to the operations of the Medical Center, and other considerations that would be important to an employer deciding whether to grant an employee leave without pay for four months. Finally, Plaintiff has not shown that the other two employees had already been on an extended period of leave without pay when they were granted candidacy leave.[4] Since Plaintiff was not similarly situated as the other

---

of his value as an employee. There is evidence that while Plaintiff was on FMLA leave, Martinez formed an opinion that Plaintiff did his job well and was a valuable employee whose loss was keenly felt. Thus, there is evidence to support the but-for causation theory. But-for causation, however, is not the same thing as retaliatory motive, at least in this instance and with respect to this law. There is no evidence other than Plaintiff's pure speculation that Martinez was retaliating against Plaintiff for taking the FMLA leave, as opposed to wanting him back at work because he needed him there. The Court does not believe Congress intended, in enacting the FMLA, to preclude an employer from considering the fact an employee has already been off work for twelve weeks, pursuant to FMLA leave, in deciding whether to immediately grant that employee even more time off without pay for a reason other than an FMLA reason. Congress intended to ensure employees they could take up to twelve weeks off, in any twelve-month period, for serious health or family purposes, without jeopardizing their jobs. In outlawing retaliation for exercising FMLA rights, however, Congress did not intend to ensure that employees could "stack" their FMLA leave onto other types of leave to obtain additional time off. Cf. Cox v. Autozone, Inc., 990 F.Supp. 1369 (M.D.Ala. 1998) (employee who took 13 weeks of paid leave under employer's policy was not entitled to additional 12 weeks of unpaid leave under FMLA).

[4]Plaintiff argues that it is impermissible to consider his FMLA leave as a factor in denying his request for another, different leave of absence, because he had a statutory right to such leave. As

employees, his claim of disparate treatment must fail. See Hennigh v. City of Shawnee, ___ F.3d ___, 1998 WL 574423 (10th Cir. 1998) (allegation that plaintiff was treated differently from others similarly situated is an essential element of an equal-protection action); Wilson v. Utica Park Clinic, 1996 WL 50462 (10th Cir. 1996) (similarly situated employees are those who deal with the same supervisor and are subject to the same standards governing work conditions); Magruder v. Runyon, 1995 WL 311740 (10th Cir. 1995) (employees not similarly situated where grievances decided by different supervisors). Summary judgment will be granted on this claim.

**C. First Amendment**

Plaintiff maintains his First Amendment rights were violated when he was forced to choose between his job and his candidacy for office. This choice was forced upon him because of Section 10-9-21(C), which requires state employees to take a leave of absence if they become a candidate for public office. When Plaintiff's request for leave was denied, he had to choose between keeping his job and exercising his right to run for office.

Defendants have addressed Plaintiff's First Amendment claim solely as a retaliation claim. They argue Plaintiff has failed to show he engaged in protected speech, and presented no evidence tending to show the motivating factor in the denial of his requested leave was any First Amendment activity. As the Court perceives Plaintiff's arguments, however, they are more straightforward than a retaliation claim.[5] Plaintiff is simply maintaining he had a First Amendment right to run for political office, and was denied that right by a combination of Section 10-9-21(C)'s requirement that he take

---

discussed above, however, the Court does not believe Congress intended to prohibit employers from considering the fact an employee has just taken a substantial period of FMLA leave when deciding whether to grant that employee even more time off.

[5]Plaintiff does, in addition, expressly raise a retaliation claim, which will be discussed below.

7

a leave of absence, and Defendants' denial of the necessary leave. That is the issue the Court will address in this portion of the opinion.

As a preliminary matter, the Court notes it is not inclined to recognize a constitutional right to take a leave of absence to run for office. The Constitution does not appear to require the government to make it easier for its employees to run for political office, by granting them leave of absence and saving their jobs for them if they should end up losing the elections. In this case, however, there is the additional factor that under state law, the only way a state employee can run for office is to take a leave of absence. The Court must determine whether this limitation in turn mandates, as a constitutional matter, that a leave of absence be granted if the same is requested by a state employee.

It seems to be accepted, although the point is not without dispute, that the right to be a candidate for public office is a right protected by the First Amendment. See, e.g., Click v. Copeland, 970 F.2d 106, 112 (5th Cir. 1992) (running for elected office is conduct addressing matters of public concern, and balancing test must be applied before employee may be disciplined for running); Segars v. Fulton County, 644 F.Supp. 682, 687-88 (N.D.Ga. 1986) (right to run for public office is not a fundamental right, but is an important right); but see Bart v. Telford, 677 F.2d 622, 624 (7th Cir. 1982) (First Amendment does not confer a right to run for public office, either expressly or by implication). As a government employee, however, Plaintiff was constitutionally subject to serious restrictions on his right to run for office. See, e.g., Broadrick v. Oklahoma, 413 U.S. 601, 616-17 (1973) (statute prohibiting state employees from being candidates for paid public office held valid); Magill v. Lynch, 560 F.2d 22, 27 (1st Cir. 1977) (government may place limits on campaigning by public employees if the limits substantially serve governmental interests important enough to

outweigh the employees' First Amendment rights); Segars (applying balancing test to determine whether employee could be required to take unpaid leave of absence to run for office, and to resign if successful in the election). The level of restriction that may constitutionally be imposed varies, depending on the governmental interests involved. Id. Factors relevant to the decision include the partisan or nonpartisan nature of the election, the nature of an employee's responsibilities, and the possibility for conflict between those responsibilities and those required by the elective office. Segars, 644 F.Supp. at 685-86.

Neither of the parties submitted evidence concerning the various factors mentioned above, such as the partisan or nonpartisan nature of the Las Vegas mayoral election. Similarly, neither party provided evidence that the position of mayor is a paid or unpaid position. However, the Court takes judicial notice of City of Las Vegas Ordinance No. 81-19, passed May 13, 1993, and providing that the position of Mayor of Las Vegas includes a salary of $12,311 (after adjustment for changes in the relevant state statute). See Zimomra v. Alamo Rent-A-Car, Inc., 111 F.3d 1495, 1503-04 (10th Cir. 1997) (federal court is authorized to take judicial notice of provisions in municipal ordinances, with or without request of parties). This fact is highly significant. In Broadrick, the Supreme Court, by approving the statute prohibiting candidacy for any paid public office, essentially held that a state may constitutionally prevent any of its employees from running for such office. In other words, the Supreme Court indicated the balancing test for state employees starts, and perhaps ends, with the question of whether the public office involved is a paid or unpaid position. Therefore, as a state employee, Plaintiff had no First Amendment right to run for the paid public office of mayor of Las Vegas, and Defendants violated no First Amendment right by denying him the leave of absence he

needed to both retain his job and run for mayor. Summary judgment will be granted Defendants on this claim.

### D. Constructive Discharge

Plaintiff contends he was constructively discharged when he chose to resign rather than forego his asserted right to run for mayor. To the Court's knowledge (and Plaintiff has cited no authority to the contrary), the doctrine of constructive discharge is not applicable when an employee resigns of his own free will. See Jeffries v. State of Kansas, 147 F.3d 1220, 1233 (10th Cir. 1998) (even if employee resigns as result of employer's actions, no constructive discharge occurs if employee resigns of own free will); Yearous v. Niobrara County Memorial Hosp., 128 F.3d 1351, 1356 (10th Cir. 1997) (same). Plaintiff submitted no evidence that his work conditions were so intolerable a reasonable person would have been compelled to leave. Jeffries. Plaintiff simply chose to resign to pursue another opportunity, the opportunity to run for elective office. While it is true this opportunity involved the exercise of a possible (albeit limited) constitutional right, that fact does not make the doctrine of constructive discharge applicable as an alternate theory of recovery. This is especially true given the Court's holding that Plaintiff had no constitutional right to run for office and retain his job. Summary judgment will be granted Defendants on this claim.

### E. Due Process

Plaintiff has alleged a violation of his right to both substantive and procedural due process. The key question to be answered with respect to both types of due process is whether Plaintiff was deprived of a protected property or liberty interest. If he was not, he has no claim under the Fourteenth Amendment, whether under the rubric of substantive due process or procedural due process. Hennigh, ___ F. 3d at ___, 1998 WL 574423 at *3. For purposes of substantive due

10

process, the possible property or liberty interest is not based on state law but must be founded upon deeply rooted notions of fundamental personal interests derived from the Constitution. Id. at *8. Procedural due process claims, on the other hand, are grounded upon property or liberty interests created by state law or other sources independent of the Constitution. Id. at *3.

Plaintiff argues that the property interest involved in this case was his employment with the state. The Court disagrees. Defendants' actions did not deprive Plaintiff of his employment; he did so himself, by choosing to resign his position. See Parker v. Bd. of Regents, 981 F.2d 1159, 1162 (10th Cir. 1992) (if plaintiff resigned due to own free will, even though due to actions of defendants, she voluntarily relinquished her property interest in employment and was not deprived of that interest without due process). There is no evidence Plaintiff did not voluntarily choose to resign, which might lead to a different result. Id. Instead, the only property or liberty interest that might be involved in this case is Plaintiff's possible right to a leave of absence to run for office.[6] That is what Plaintiff was denied, or deprived of, by Defendants' actions.

As the Court has discussed above, the right to run for office is not a fundamental right and is subject to substantial restriction if the would-be candidate is a government employee. Therefore, Plaintiff's possible right does not rise to the level of a fundamental right or interest that should be protected by the substantive-due-process component of the Fourteenth Amendment. See Hennigh, at *8 (substantive due process doctrine prevents government from interfering with rights implicit in the concept of ordered liberty).

---

[6] It is not necessary to decide whether the right to a leave of absence to run for office is a liberty or property interest. Since it is related to freedoms guaranteed by the First Amendment as well as to the right to retain public employment, it appears to implicate both concerns. For purposes of this opinion, the Court will refer to Plaintiff's possible right as a liberty interest.

The remaining question under the Fourteenth Amendment claim is whether state law has created a liberty interest in government employees, to be entitled to a leave of absence to run for office. The answer to this question depends, in part, on how Section 10-9-21(C) is interpreted. State statutes or regulations create a liberty interest only if they place substantive restrictions on a government actor's ability to make decisions. Hennigh at *3, 4. If Section 10-9-21(C) is interpreted as requiring the state to grant a leave of absence upon request, it may create a liberty interest by placing severe substantive restrictions on the government – that is, if a candidacy leave is requested, and the employee has actually become a candidate, the leave must be granted. If, on the other hand, Section 10-9-21(C) is interpreted to require only that an employee must take leave of absence to run, but the government need not grant such leave, the statute places no substantive restrictions on the government's ability to deny the requested leave. In that circumstance, the statute cannot be found to create a liberty interest.

The words of Section 10-9-21(C) are simple. "Any employee who becomes a candidate for public office shall ... take a leave of absence." Plaintiff construes this language to mean the employee must take a leave of absence and the state must allow the employee to do so. Defendants, on the other hand, argue the statute means the employee must take a leave of absence, if the state in its discretion decides to authorize such leave. It is not easy to discern the legislature's intent merely from examining the words of the provision; both parties' interpretations of the provision appear reasonable. It is therefore necessary to examine the general context of the statute and of similar statutes in other states, as well as the impact of the provision on individual rights and liberties.

Many other states have statutory provisions similar to Section 10-9-21(C), requiring state employees to take unpaid leaves of absence if they run for elective office. Most of these provisions

include explicit language commanding the state to grant such leaves if they are requested. See, e.g., IA St. § 55.4 (Iowa: public employee shall automatically be given leave for 30 days); M.C.L.A. § 15.402(c) (Michigan: state employee becoming candidate for statewide executive, judicial, or legislative position shall request and be granted leave of absence); M.S.A. § 43A.32 (Minnesota: upon request, state employee shall be granted leave of absence to be a candidate); W.V. St. § 29-6-20 (West Virginia: classified employee who becomes candidate for paid public office shall be placed on leave of absence). One other state, Florida, has a statute with language virtually identical to Section 10-9-21(C). F.S. § 99.102 (state employee shall take a leave of absence without pay during the period the employee is seeking election). Unfortunately, the Court could locate no judicial decisions interpreting Florida's provision.

Again, examination of the other states' statutes leads to inconclusive results. On the one hand, the New Mexico legislature did not include the explicit language contained in most of the statutes, mandating that a leave of absence be granted if requested. One could infer the legislature deliberately omitted such language because it did not wish to have the taking of leave be automatic. After all, it would have been an easy matter for the legislature to include three or four words explicitly mandating that requested leaves be given. On the other hand, it is possible the legislature was intending to achieve the same result as the other states, and by using the imperative phrase "shall take" a leave of absence the legislature intended to mean the same thing as "shall request and be granted" such a leave.

The State Personnel Board, charged with regulating the employment of New Mexico state employees, has apparently determined Section 10-9-21(C) is permissive as to the state rather than mandatory. The Board's regulations provide an employee may be a candidate for any public office

13

if the employee is authorized full-time continuous leave without pay. S.P.B. Regulation 11.3. In turn, the regulations concerning general leave without pay are highly discretionary, stating such leave may be granted if certain conditions are met. S.P.B. Reg. 11.1. These regulations, adopted pursuant to the Board's duty to promulgate regulations implementing the personnel statutes, are entitled to some deference. See NMSA 1978, § 10-9-10(A) (Board required to promulgate regulations implementing Personnel Act); Jones v. Runyon, 32 F.3d 1454, 1457-58 (10th Cir. 1994) (agency's interpretation of ambiguous provision within a statute it is authorized to implement is entitled to judicial deference).

As discussed above, under Broadrick the legislature could have entirely prohibited state employees from running for any paid public office, as Oklahoma and other states have done. Instead, the legislature chose to require employees to take a leave of absence to run for public office. The legislature did not, however, include language such as that found in many other statutes, requiring that a leave of absence be automatically granted upon request. If the statute is interpreted to be mandatory upon the agency as well as the employee despite the lack of such explicit language, a state agency would have no choice but to grant requested political leave, without any consideration of the agency's needs or the circumstances of the request.[7] The Personnel Board has determined that state agencies should instead have discretion to grant or deny requests for such leave, a determination that is entitled to deference from this Court. Considering all of these factors, the Court holds the statute is mandatory for employees, but not for agencies. That is, an employee must take a leave of absence to run for office but a state agency has discretion to decide whether to grant a request for such leave.

---

[7] For example, the agency would have to grant the request whether it was the employee's first candidacy or one in a long series of leaves of absence taken for political purposes.

Given this holding, the Court also holds Plaintiff had no liberty or property interest in the requested leave of absence. For that reason, summary judgment will be granted Defendants on Plaintiff's due-process claim.

**F. First Amendment Retaliation**

Plaintiff maintains Martinez recommended denial of his requested leave of absence in retaliation for Plaintiff's speech concerning a sexual harassment charge brought against Martinez. To prevail on such a claim, Plaintiff must show, among other things, he engaged in protected speech and suffered a subsequent adverse employment action as a result of his protected speech. Lytle v. City of Haysville, 138 F.3d 857, 863 (10th Cir. 1998). Plaintiff has shown neither that his speech was protected nor the necessary causal connection between that speech and the denial of his request for a leave of absence. Plaintiff's statements to investigators concerning the sexual harassment allegations concerned a single complainant and a single case. They were not directed toward ending sexual harassment in the workplace in general, and in fact denied that Martinez had committed such acts. Therefore, Plaintiff's statements did not involve matters of public concern and were not protected speech. See David v. City and County of Denver, 101 F.3d 1344, 1355 (10th Cir. 1997) (speech relating to internal personnel disputes and working conditions ordinarily is not viewed as speech on a matter of public concern).

In addition, Plaintiff has established no causal connection between his statements and Martinez' recommendation concerning denial of the leave. The sexual harassment investigation and Martinez' alleged resulting anger at Plaintiff occurred over a year before the request for a leave of absence. See Conner v. Schnuck Markets, Inc., 121 F.3d 1390, 1395 (10th Cir. 1997) (four-month time lag between the protected conduct and the adverse employment action is too long to justify an

15

inference of causation). Furthermore, since Plaintiff's statements to the investigators were favorable toward Martinez, the content of the statements cannot provide an inference that Martinez would wish to retaliate against Plaintiff by recommending denial of the requested leave of absence. Summary judgment will be granted Defendants on this claim.

**G. Qualified Immunity**

Defendants Buff and Martinez argue they are entitled to qualified immunity to the extent they are being sued in their individual capacities. When a qualified immunity defense is raised, the plaintiff assumes the burden of showing the defendants violated clearly established law. Breidenbach v. Bolish, 126 F.3d 1288, 1291 (10th Cir. 1997). The plaintiff must identify a clearly established statutory or constitutional right of which a reasonable person would have known, and allege facts to show the defendants' conduct violated that right. Id.

As discussed above, Defendants are entitled to summary judgment on the merits of all the claims raised by Plaintiff. The need to address the qualified-immunity issue is thus obviated. Even if the Court did find Plaintiff's other claims persuasive, however, it would grant summary judgment to Buff and Martinez based on qualified immunity.

In order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clear weight of authority from other courts must have found the law to be as the plaintiff maintains. Dill v. City of Edmond, ___ F.3d ___, 1998 WL 546131, *6 (10th Cir.). The law must have been clearly established at the time of the defendants' actions, rather than at the present. Id., at *16 (noting that a Tenth Circuit decision subsequent to the events that led to the lawsuit did not provide clearly established law). Defendants' actions in this case took place in late 1995. It is therefore necessary to examine the state of the law at that time to determine whether

there was clearly established law holding a state employee in Plaintiff's circumstances was statutorily or constitutionally entitled to a leave of absence to run for office.

In the Tenth Circuit, there are no cases discussing the possible First Amendment right of a government employee to a leave of absence to run for office. In fact, there are no Tenth Circuit cases addressing the scope of a government employee's general First Amendment right to be a candidate for elective office at all. Most other courts discussing the issue have held, as noted above, that there is such a general right, although the right is not fundamental. The existence of the general right, however, is not enough to show there was clearly established law applicable to Plaintiff's particular situation. See, e.g., Horstkoetter v. Dep't of Public Safety, ___ F.3d ___, 1998 WL 751104, *11 (10th Cir. 1998) (must be some factual correspondence between cases cited and situation in current case; existence of constitutional rights on general level is not sufficient to overcome claim of qualified immunity).

So far as the Court is aware, no case has decided a state employee has a First Amendment right to a leave of absence if such leave is required during the employee's candidacy. In fact, the Court is aware of no case since Broadrick that has struck down any restriction on a state employee's ability to be a candidate, although a few cases (such as Segars) have invalidated restrictions on local government employees' rights to run for office. Broadrick placed an apparent stamp of approval on a state's ability to prevent its employees from running for any paid public office, and there appears to be no subsequent case holding that a state, as opposed to a local governmental unit, exceeded its powers by preventing an employee from running for elective office. The Court therefore holds there was no clearly established law preventing Defendants, as a First Amendment matter, from denying Plaintiff the leave of absence he needed to both retain his job and run for mayor. Even if Plaintiff can

17

establish a First Amendment violation arising out of the denial of his requested leave, the individual Defendants are entitled to qualified immunity on that claim.

Similarly, there was no clearly established law in 1995 showing that Section 10-9-21(C) requires a state employer to grant candidacy leave if such leave is requested. The language of the provision is ambiguous, and can reasonably be read either to impose such a requirement on the state or to refrain from doing so. Case law from other states is non-existent. Indeed this Court was forced to make a judgment call as to what the legislature intended in enacting the provision. Defendants can hardly be required to have known what the result of that judgment call would be. Therefore, they are entitled to qualified immunity on the due-process claim as well.

Finally, with respect to the FMLA retaliation claim, the only possible meritorious claim Plaintiff might have is the argument that his FMLA leave status could not be considered at all in deciding whether to grant his request for another leave of absence. There is no case law on the subject, and the statute itself is silent. Again, absent clearly established law to the effect that Defendants' conduct was unlawful, they are entitled to qualified immunity on this claim.

**Conclusion**

Pursuant to the foregoing, all of Plaintiff's claims will be dismissed. Furthermore, to the extent any of the dismissed claims might later be reinstated, Buff and Martinez are entitled to qualified immunity in their individual capacities.

**O R D E R**

For the above stated reasons, Defendants' motion for summary judgment (Doc. 29) is GRANTED, and Plaintiff's motion for summary judgment (Doc. 36) is DENIED. All of Plaintiff's claims are therefore DISMISSED.

Dated at Albuquerque this 9th day of November, 1998.

*[signature]*
**BRUCE D. BLACK**
United States District Judge

Counsel for Plaintiff:
James A. Burke
P.O. Box 9332
Santa Fe, New Mexico 87504

Counsel for Defendants Buff and Martinez:
Herrera, Long & Pound, P.A.
Judith C. Herrera
P.O. Box 5098
Santa Fe, New Mexico 87502

Counsel for Defendants New Mexico Department
of Health and Las Vegas Medical Center:
Office of the Attorney General
Karen H. Bradley
P.O. Drawer 1508
Santa Fe, New Mexico 87504